## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-16-267 |
| | * | |
| DWIGHT JENKINS | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

Dwight Jenkins is a federal prisoner, currently incarcerated at Fort Dix FCI, serving a 120-month sentence for racketeering conspiracy, in violation of 18 U.S.C. § 1963(d) and conspiracy to distribute one kilogram or more of heroin and 280 grams or more of cocaine base, in violation of 21 U.S.C. § 846. Now pending is Jenkins's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF 1495). Jenkins seeks relief based on underlying health conditions making him particularly susceptible to serious illness related to COVID-19. (ECF 1501). The government opposes the motion, (ECF 1536), and Jenkins has replied, (ECF 1567).[1] For the reasons explained below, the motion will be denied.

### BACKGROUND

From about July 2015 to September 2016, Jenkins was an associate of Murdaland Mafia Piru ("MMP"), a gang in Northwest Baltimore. (ECF 370 [Plea Agreement] at 5–6). While he never joined MMP, he conspired with members of the group to distribute heroin and cocaine base in furtherance of the gang's activities. (*Id.* at 6). On September 27, 2016, law enforcement officers executed a search warrant at Jenkins's residence, and recovered two types of ammunition, body armor, an empty Glock pistol box, a small amount of crack cocaine, two digital scales, and

---

[1] Through counsel, Jenkins supplemented his motion with updates on conditions at Fort Dix. (ECFs 1569, 1570, 1576). Ms. Tia Hamilton has also written in support of Jenkins's release. (ECF 1543). The court considers these submissions.

numerous plastic bags. (*Id.* at 5–6). As part of his plea, Jenkins admitted that it was foreseeable to him that between one and three kilograms of heroin and between 280 and 840 grams of cocaine base would be distributed by members of the conspiracy. (*Id.* at 6).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Jenkins submitted a request to his warden for compassionate release on March 29, 2020, based on underlying medical conditions making him particularly susceptible to serious illness related to COVID-19. (ECF 1536-2 at 3). Jenkins received a response on April 27, 2020, in which the BOP declined to consider his request because he did not specifically identify under which category of the BOP's Program Statement he was requesting release, and stated that Jenkins could either resubmit the request or appeal the response. (*Id.* at 1). The government here "defers to the Court as to whether the exhaustion requirement has been satisfied" by Jenkins's March request. (ECF 1536 at 12). The court finds the exhaustion requirement is met. The statute "requires the defendant either to exhaust administrative remedies or simply to wait 30 days after serving his

petition on the warden of his facility before filing a motion in court." *United States v. Haney*, 454 F.

Supp. 3d 316, 321 (S.D.N.Y. 2020) (emphasis in original). Jenkins filed his motion with this court

more than 30 days after his request to his warden; he is not required under the statute to resubmit

that request or to further utilize the BOP administrative process. Thus, the only issues are (1)

whether "extraordinary and compelling reasons" warrant the reduction of Jenkins's sentence and (2)

if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Under 28 U.S.C. § 994(t), the United States Sentencing Commission is responsible for

defining "what should be considered extraordinary and compelling reasons for sentence reduction"

under § 3582(c)(1)(A). According to the Commission's Policy Statement, "extraordinary and

compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical

condition; (B) the defendant is over sixty-five years old, has failing health, and has served at least

ten years or seventy-five percent of his sentence, whichever is less; (C) the caregiver of the

defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner

becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as

determined by the BOP. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). The BOP criteria for "other

reasons" justifying a sentence reduction are set forth in Program Statement 5050.50

("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§

3582 and 4205(g)"). As this court and others have held, however, the court possesses independent

discretion—guided, but not bound by, Sentencing Commission and BOP criteria—to determine

whether there are "extraordinary and compelling reasons" to reduce a sentence. *See United States v.*

*Decator*, 452 F. Supp. 3d 320, 323–324 (D. Md. 2020) (citing cases).

Jenkins argues that his risk of developing serious illness related to COVID-19 due to his

underlying medical conditions (hypertension, Graves disease, prediabetes, high cholesterol, and an

old gunshot wound to his leg) constitutes an "extraordinary and compelling reason" to reduce his sentence. (ECF 1501 at 1, 12). The government disagrees, arguing that Jenkins's medical records do not bear out some of his claims and/or that certain of his conditions do not increase his risk of severe illness from COVID-19. (ECF 1536 at 13–15). A review of Jenkins's medical records indicates that his conditions are well-documented, and that he also has a history of smoking. (ECF 1536-3 at 49). According to the Centers for Disease Control ("CDC"), Jenkins's history of smoking increases his risk of severe illness related to COVID-19, *see Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Nov. 2, 2020), and his hypertension may increase his risk of severe illness related to COVID-19, *see id*. Moreover, "[t]he more underlying medical conditions" (seemingly of any kind) "someone has, the greater their risk is for severe illness from COVID-19." *Id*. Jenkins's history of smoking and his numerous medical conditions are an extraordinary and compelling reason for his release in light of the risks those factors pose to him, *see, e.g.*, *United States v. White*, Crim. No. CCB-09-369, 2020 WL 3960830, *3 (D. Md. Jul. 10, 2020) (defendant's obesity, a clear risk factor for COVID-19, and numerous additional medical conditions were an "extraordinary and compelling reason" for release), and the risk to Jenkins of illness is not at all speculative. Jenkins's counsel informed the court on October 30, 2020, that Jenkins has tested positive for COVID-19, making him one of at least 228 prisoners at Fort Dix who currently have the virus. (*See* ECF 1570; *COVID-19: Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last accessed Nov. 9, 2020)).

Jenkins's risk factors and his current COVID diagnosis do not, however, end the court's inquiry. The compassionate release statute provides that, before reducing a defendant's sentence for "extraordinary and compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A). Here, the § 3553(a)

factors weigh against granting relief. The court must consider Jenkins's history and characteristics, and also the need for the sentence imposed to protect the public from further crimes. 18 U.S.C. §§ 3553(a)(1), (a)(2)(C). Jenkins's conduct was serious. He distributed a large quantity of drugs in furtherance of the activities of a violent gang, contributing to an increasingly dangerous environment in Northwest Baltimore during his involvement in the conspiracy. This was not the first time Jenkins engaged in such conduct: his criminal history indicates that Jenkins was convicted, in 2006, for possession with intent to distribute narcotics in Maryland. (*See* ECF 1536-3 [Presentencing Report] at 10). The court finds that a reduction in sentence would not adequately protect the public from further crimes by Jenkins. Moreover, the court must ensure that a sentence reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence. *See* § 3553(a)(2)(A)–(B). Jenkins has served less than half of his ten-year sentence, which is the mandatory minimum sentence for convictions involving the trafficking of this quantity of drugs. (*See* ECF 377 [Statement of Reasons] at 1). Accordingly, the court finds that the balance of the § 3553(a) factors weighs against granting compassionate release. In making this finding, the court is certainly mindful of Jenkins's COVID-19 diagnosis and hopes for his recovery; his current health status does not, however, persuade the court that it is appropriate to release Jenkins at this time.

**CONCLUSION**

For the foregoing reasons, Jenkins's motion for compassionate release (ECF 1495) will be denied. The associated motions to seal (ECFs 1528, 1535) will be granted to protect the confidentiality of personal information. A separate order follows.

  11/10/20  
Date

_____/S/_____
Catherine C. Blake
United States District Judge

5